# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Douglas Anderson, Kyle Babb, Kevin Banks, Jonathan Bekemeyer, Michael Beshiri, William Blakesley, Robert Charlebois, Calvin Cooksey, William Cox, Brad Davis, Jason Dills, Michael Guy, Levi Hagemann, Michael Hall, Jeff Huey, Alberto Kercado, Tod Leslie, Jefferson Miller, Jose Oliveras, Salvador Perez, Richard Pruden, Andrew Rogers, Daniel Scott, Gary Strickland, Jon Taylor, Jason Terrill, Wayne Turnage, Trevor Vascellaro, Brian Weeder, and John Wilds,<br><br>           Plaintiffs,<br>v.<br><br>3M Company and<br>Aearo Technologies LLC,<br><br>           Defendants. | Case No. 20-cv-2010<br><br>**NOTICE OF REMOVAL** |

Defendant 3M Company ("3M") hereby gives notice of removal of this action, pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), and 1446, to the United States District Court for the District of Minnesota.

This case is one of hundreds of lawsuits filed in Minnesota state court by current or former servicemembers against 3M and Aearo Technologies LLC[1] alleging injuries caused by Combat Arms™ Earplugs, Version 2 ("CAEv2"), all of which have been removed to the District Court of

---

[1] 3M acquired Aearo Technologies, Inc. ("Aearo") in 2008. After acquiring Aearo in 2008, 3M continued to sell CAEv2. Aearo Technologies LLC, named in the Complaint, is a different entity from Aearo. Nonetheless, it consents to this removal.

Minnesota and transferred to a Multidistrict Litigation Court ("MDL Court") in the Northern District of Florida. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.* ("*In re 3M*"), No. 3:19-md-2885, 2020 WL 365617, at *1 (N.D. Fla. Jan. 22, 2020). The MDL Court has denied remand for each of the cases transferred to the MDL. *Id.*[2]

The District of Minnesota has only remanded a handful of cases involving the CAEv2 to state court, all of them involving plaintiffs who allege no relation to the military and who brought only failure-to-warn claims. *See Trail v. 3M Co.*, No. CV 20-1153 (JRT/KMM), 2020 WL 4193868 (D. Minn. July 21, 2020) (remanding failure-to-warn claims brought by a firefighter, helicopter mechanic, heavy machinery mechanic, molding manufacturer, and boilermaker); *Graves v. 3M Co.*, *Co.*, No. CV 19-3094 (JRT/KMM), 2020 WL 1333135 at *1 (D. Minn. Mar. 23, 2020) (remanding a failure-to-warn claim brought by a police officer). Additionally, the only federal defense alleged by Defendants in those cases was the government contractor defense. *Id*. In those cases, the court concluded that 3M met most elements of the federal officer removal statute, but failed to demonstrate a colorable federal defense. *Graves*, 2020 WL 1333135 at *8-

---

[2] The MDL Court recently granted Plaintiffs' motion for summary judgment on the federal contractor defense. *In re 3M*, No. 3:19-md-2885, 2020 WL 4275646, at *20 (N.D. Fla. July 24, 2020). This decision has no effect on whether that defense is "colorable" for the purposes of removal. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (noting the defendant had presented a colorable defense of inter-governmental tax immunity for jurisdictional purposes even though the Court ultimately rejected that defense); *Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994) ("the jurisdiction of the federal courts over a properly removed action will not be defeated by later developments in the suit." (quotation omitted)). Even more, the MDL's summary judgment decision does not cast doubt on 3M's other grounds for removal, such as its combatant activities defense.

*13[3]; *see also Trail*, 2020 WL 4193868 at *4 (remanding "for the same reasons outlined in *Graves*.").

This case differs from *Graves* and *Trail* in important ways. Unlike *Graves* and *Trail* (which are now on appeal to the Eighth Circuit), Plaintiffs used the CAEv2 while serving in the military. They also allege their injuries arose from wartime military service in Iraq and Afghanistan. These factual differences provide additional grounds for removal.

3M intends to assert the federal government contractor defense and the combatant activities defense. Aearo sold the CAEv2 to the U.S. military under government contracts and in accordance with the military's rigorous specifications. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action to have its federal defenses adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008) (*citing Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 127 (2007)).

Separately, this action is also removable because Plaintiffs seek to hold 3M liable for alleged injuries that occurred in part at one or more federal enclaves. While Plaintiffs do not identify these enclaves specifically in their Complaint, they are almost certainly "federal enclaves" for jurisdictional purposes. "Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir.

---

[3] This Court, in *Graves*, determined that there was a causal connection between 3M's actions and its official authority. *Id*. at *7-*8. While the Court did not expressly determine that 3M was a "person" that was "acting under" the direction of a federal officer, such a determination was necessarily implied.

3

2006). Because Plaintiffs' claims arose, at least in part, at federal enclaves, the claims involve a federal question, and 3M may remove this action under 28 U.S.C. § 1441(a).

Removal is timely because this action was served on 3M on August 25, 2020. Venue is proper pursuant to 28 U.S.C. §§ 103 and 1442(a) because the Fourth Judicial District is located within this District. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Fourth Judicial District.

## BACKGROUND

The CAEv2 is an earplug developed specifically for the needs of the U.S. military for use as hearing protection in noisy environments. CAEv2 has a yellow end and green end. Each end has a different purpose. When the yellow end of the earplug is inserted, users can still hear nearby low-level sounds, like verbal communication, but receive protection from high-level impulse noise, like gunfire. In contrast, when the green end of the earplug is inserted, CAEv2 acts like a traditional earplug, providing steady and continuous protection from both ambient and impulse noise.

In the area of national defense, the U.S. military relies on close collaboration with private contractors to design and develop products, such as the CAEv2, that satisfy the operational and budgetary needs of the nation's fighting forces. This litigation involves a classic example of that military-contractor collaboration.

CAEv2 was designed at the request of and in consultation with military audiologists, including Dr. Doug Ohlin. Ohlin at the time served in the capacity of Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventive Medicine (USACHPPM). Ohlin and his program gave direction to Aearo to ensure that the CAEv2 would meet the military's

operational needs. For example, Ohlin proposed the inclusion of the filter that was a key updated feature of the CAEv2. Ohlin also specifically directed Aearo to shorten the CAEv2 so that it would be compatible with soldiers' headgear and would fit into a military-issued carrying case.[4]

The military was in charge of training and instructing servicemembers on the proper use of CAEv2. The government initially instructed Defendants to ship the CAEv2 *without* instructions because Ohlin felt that personal training was the most effective way to train soldiers military. Accordingly, military audiologists took on the responsibility of individually training every soldier. Indeed, in-person fit and training was *required* by DOD policy. Beginning at least as early as 2001, Ohlin gave the following instruction to military audiologists on how to fit the CAEv2: "if you needed to, you could fold back the flanges on the earplug to get a good fit." In 2004 the military created its own written training materials for the CAEv2, which included a "wallet card" that could be distributed to service members at the time they were fitted with the earplug and a two-page overview. Both of these materials included instructions to fold back the flanges if needed. In sum, the CAEv2 was launched at the request of, and designed in close coordination with, the U.S. military. The U.S. military was also responsible for training servicemember on using the CAEv2, instructing Defendants to ship the product without instructions..

### BASES FOR FEDERAL JURISDICTION AND REMOVAL

**I. REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE.**

Removal is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts that occurred at least in part "*because of* what they were asked to do by

---

[4] Ohlin's involvement continued following the military's decision to purchase and deploy the CAEv2. He provided Aearo with feedback from military personnel as to using the CAEv2 and developed training and instructions for military personnel.

5

the Government." *Isaacson*, 517 F.3d at 137. Removal rights under this section are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because Section 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, No. 11 Civ. 5990 (BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of s 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

The removing defendant must establish that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal connection between the defendant's actions and the official authority; and (4) the defendant raises a "colorable" federal defense. *See Mesa v. Cal.*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012). All requirements for removal under § 1442(a)(1) are satisfied here. *Cf., e.g.*, *In re 3M*, 2020 WL 365617 at *1; *Ayo v. 3M Co.*, No. 18-CV-0373 (JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case where product liability was sought for defendants' product's conformance with military specifications).

### A. The "Person" Requirement Is Satisfied.

The first requirement for removal under Section 1442 is satisfied because 3M is a "person" under the statute. "[T]he 'person' contemplated by the federal officer removal statute includes corporations." *Jacks*, 701 F.3d at 1230.

### B. The "Acting Under" Requirement Is Satisfied.

To satisfy the second requirement ("acting under" a federal officer) "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Id.* (holding that health insurer contracted by U.S. Office of Personnel Management was "acting under" a federal officer) (*quoting Watson*, 551 U.S. at 152). "The words 'acting under' are to be interpreted broadly." *Isaacson*, 517 F.3d at 136. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016); *see also Jacks*, 701 F.3d at 1230 (although "not limitless, '[t]he words "acting under" are broad,' and the Supreme Court 'has made clear that the statute must be "liberally construed."'") (*quoting Watson*, 551 U.S. at 147).

The "acting under" requirement is met here because Plaintiffs challenge Defendants' conduct while designing, testing, and writing instructions for the CAEv2. As discussed above, Aearo designed and manufactured the CAEv2 at the direction of the U.S. military to meet the military's specific needs to provide hearing protection and developed fitting instructions in coordination with the U.S. military.

The military directed and approved the design of the CAEv2, including its length and created the training protocols and materials for using the CAEv2. *See, e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (holding that defendant was "acting under" a federal officer because it "worked hand-in-hand with the government, assisting the federal government in building warships. 'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."); *Isaacson*, 517 F.3d at 137 ("Defendants contracted with the Government to provide a product that the Government was using during war—a product that, in the absence of Defendants,

7

the Government would have had to produce itself.").

### C. The "Causation" Requirement Is Satisfied.

The third prong, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (internal quotation marks, alterations, and citation omitted). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.* Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137 (*citing Acker*, 527 U.S. at 431-32 (1999) ("demanding an airtight case on the merits in order to show the required causal connection" would "defeat the purpose of the removal statute")).[5] In 2011, Congress further expanded Section 1442 by amending section 2(b) to permit removal "for *or relating to* any acts under color" of federal office, so as "to broaden the universe of acts that enable Federal officers to remove to Federal court." H.R. REP. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425 (emphasis showing addition).

"To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original). Here, Plaintiffs' claims arise from Defendants' production and sale of CAEv2 to the specifications approved by the military. Plaintiffs allege that the design of the CAEv2 is defective and that the instructions for the CAEv2 were inadequate. Aearo developed and designed the Combat Arms™ earplugs, and shipped them to servicemembers without instructions, at the direction of federal officers.

---

[5] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

Further, even if Plaintiffs were to prove that any alleged defect was the result of an act not specifically contemplated by the government contract, "it is enough that the contracts gave rise" to the harms alleged. *Id.* at 138. "[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer." *Id.* (*citing Willingham*, 395 U.S. at 409.). This Court has addressed this precise activity in another case, and found that 3M had "demonstrate[ed] that the warnings and instructions for its earplugs plausibly have some connection to, or association with, governmental actions," meeting the "initial low hurdle" to meet this requirement. *Graves*, 2020 WL 1333135 at *8.

### D. The "Colorable Federal Defense" Requirement Is Satisfied.

The fourth requirement (establishing a "colorable federal defense") is satisfied by 3M's assertion of the government contractor defense and the combatant activities defense. Courts around the country have held that the government contractor defense and the combatant activities defense support removal under § 1442(a)(1). *See, e.g.*, *Jacks*, 701 F.3d at 1234-35 (government contractor defense supports removal under § 1442); *Isaacson*, 517 F.3d at 139 (same); *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Circuit 2017) (same); *McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1200 (M.D. Fla. 2006) (both government contractor defense and combatant activities defenses supported removal under Section 1442).

A defendant need not prove its defense at the removal stage; a defendant need only show that a federal defense is "colorable." *Jacks*, 701 F.3d at 1235. Courts will not "require that these defenses be clearly sustainable in order to support removal under § 1442(a)(1)." *Id*. (*citing Willingham*, 395 U.S. at 406–07 ("[The federal officer removal statute] is broad enough to cover all cases where federal officers can raise a colorable defense. . . . The officer need not win his case before he can have it removed.").)

9

At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014). (citing *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006)).[6] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

### 1. 3M Has a Colorable Government Contractor Defense.

Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. This defense extends to failure-to-warn claims. *Graves*, 2020 WL 1333135 at *8 n.3; *see also Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 211 (4th Cir. 2016) ("[W]e now join the chorus and hold that the government contractor defense is available in failure to warn cases." (collecting cases)). 3M has satisfied each of these elements for purposes of removal.

---

[6] *See also Kraus v. Alcatel-Lucent*, Civil Action No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determines whether there are sufficient facts alleged to raise a colorable defense.").

The government contractor defense applies to claims base on alleged defects in the instructions and label elements provided by the military. The military took on the responsibility for personally training servicemembers on proper use of the CAEv2 and drafted the training materials provided to servicemembers. Defendants "should not be held liable for deficiencies in the contents of [training materials] if the contents are dictated by the government." *Nicholson v. United Techs. Corp.*, 697 F. Supp. 598, 604 (D. Conn. 1988). Even more, the military's express instruction to ship CAEv2 without instructions. The government contractor defense applies in this scenario because "government officials ultimately . . . remain[ed] the agents of [the] decision" regarding how military personnel would be warned an instructed to use the CAEv2. *In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990).

Aearo also did not fail to inform the government of known dangers when it approved the specifications and instructions. First, there was no known danger Defendants were obligated to disclose. The CAEv2 met the military's attenuation expectations for dual-ended earplugs with or without the flanges folded back. Second, to the extent there were "dangers," Aearo's engineers did inform the government of its testing results and the fitting issues created by the military's request to shorten the product, and told the Army that some users would obtain a better fit if they folded back the opposing flanges before insertion. And third, the military was also fully aware of any issues as a result of its own testing and use of the CAEv2. *See e.g.*, *Zinck v. ITT Corp.*, 690 F. Supp. 1331, 1332–33, 1337–38 (S.D.N.Y. 1988) (finding military's field tests alerted the military to product limitations); *Haltiwanger v. Unisys Corp.*, 949 F. Supp. 898, 900-01, 905 (D.D.C. 1996) (finding government was "independently aware" of product limitations as a result of its own "extensive testing" and long use).

11

Moreover, 3M's government contractor defense regarding the allegedly defective design of the CAEv2 applies to Plaintiffs' failure-to-warn claims. District courts have repeatedly held that duty-to-warn claims "merely repeat design defects" where they only allege that a defendant failed to warn that the product "had not been properly designed, manufactured, assembled and tested." *Koutsoubos v. Boeing Vertol, Div. of Boeing Co.*, 553 F. Supp. 340, 344, 344 n.6 (E.D. Pa. 1982), *aff'd*, 755 F.2d 352 (3d Cir. 1985); *see also Nicholson v. United Techns. Corp.*, 697 F. Supp. 598, 603 (D. Conn. 1988) ("In some cases, duty to warn claims merely repeat design defects.").

Here, the crux of Plaintiffs' allegations is that the CAEv2 were defectively designed because they did not meet the military's performance standards without special fitting instructions. (Compl. at ¶ 202 (alleging the CAEv2 could only achieve an NRR of 22 "using [a] manipulated test protocol"); ¶ 209 ("Defendants' failure to warn about the need for special fitting instructions for the [CAEv2] caused Plaintiffs to suffer hearing loss and tinnitus."); achieving an NRR of 22 is only important because it is the level of protection required by the military standards). 3M's defense is that the CAEv2 satisfied the military's performance expectations without the flanges folded back, so no special fitting instructions or warnings were necessary, and in any event Aearo *did* inform the military that some users would get better performance with the flanges folded back. *See Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 577 (S.D.N.Y. 2011) ("where 'failure to warn claims are themselves premised on defective design claims found to be preempted, the . . . failure to warn claims are also preempted [by] federal law.'"), *aff'd sub nom. Butnick v. Gen. Mots. Corp.*, 472 F. App'x 80 (2d Cir. 2012). 3M is entitled to litigate that federal defense in federal court.

### 2. 3M Has a Colorable Combatant Activities Defense.

The "combatant activities defense" is a complete defense for claims arising out of combat activities. Although Congress waived sovereign immunity for tort claims against the United States

12

and those acting on its behalf in the Federal Tort Claims Act, it excluded "claims arising out of combatant activities of the military or armed forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). The combatant activities exception has been applied to contractors to create a federal defense shielding manufacturers from tort claims arising from war. *See, e.g.*, *Saleh v. Titan Corp.*, 580 F.3d 1, 6 (D.C. Cir. 2009) (applying § 2680(j) exception to tort claims arising from treatment of inmates in military prison in Iraq brought against private contractor); *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486, 1492 (C.D. Cal. 1993) ("The combatant activities exception generates a federal common law defense which immunizes manufacturers such as Hughes from state tort suits arising from war."). The combatant activities defense is broader than the government contractor defense under *Boyle* because it acts like "field preemption because it casts a[n] immunity net over any claim that *arises* out of combat activities." *Saleh*, 580 F.3d at 6 (emphasis in original; internal citation omitted).

Application of the defense has two elements: (1) the presence of combatant activities; and (2) that such activities occur during a time of war. The combatant activities element has been liberally construed and is not limited to the exertion of physical force. *See Johnson v. U.S.*, 170 F.2d 767, 770 (9th Cir. 1948). Rather, "activities both necessary to and in direct connection with actual hostilities" are included. *Id.* Ammunition supply, troop movement and logistical support, and holding prisoners of war have all qualified as combatant activities under the test. *See Aiello v. Kellogg, Brown & Root Servs.*, 751 F. Supp. 2d 698, 706 (S.D.N.Y. 2011).

Each factor is satisfied here. The Complaint alleges that Plaintiffs suffered hearing loss and/or tinnitus due, at least in part, to using the CAEv2 during wartime, combat, or other military-related exigencies. While the Complaint does not plead the details of each Plaintiffs' military service, they allege they used the CAEv2 while deployed in Iraq and/or Afghanistan during

wartime. It is likely that they participated in activities both necessary to and in direct connection with actual hostilities. Claims in such circumstances fall within the scope of the combatant activities defense. *See e.g.*, *Bentzlin*, 833 F. Supp. at 1492-95 (holding that claims brought against missile manufacture for causing death of U.S. soldiers as a result of alleged product defect were barred by combatant activities defense.).

Accordingly, 3M is immune from tort claims arising from Plaintiffs' harms suffered while they were engaged in combatant activities. This defense separately supports federal question jurisdiction under Section 1442 and removal to this Court.

## II.   REMOVAL IS ALSO PROPER BECAUSE PLAINTIFFS' CLAIMS AROSE IN PART AT FEDERAL ENCLAVES.

In addition, removal of this action is proper because Plaintiffs' claims certainly arose, at least in part, at federal enclaves. To that extent, their claims are governed by federal law and are subject to this Court's federal question jurisdiction under 28 U.S.C. § 1331. Thus, this action is removable under 28 U.S.C. § 1441(a).

"A federal enclave is a portion of land over which the United States government exercises federal legislative jurisdiction." *Brookhaven Sci. Assocs., LLC v. Donaldson*, No. 04 Civ. 4013(LAP), 2007 WL 2319141, at *5 (S.D.N.Y. Aug. 9, 2007) (internal quotation and citation omitted). The Constitution confers on Congress the power to obtain this exclusive jurisdiction over lands within the United States under. *See* U.S. Const. art. I, § 8, cl. 17 (granting Congress the power "[t]o exercise exclusive legislation" over the District of Columbia "and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings."). But this is not the sole method for obtaining exclusive jurisdiction. The federal government also can gain—and *has* gained—exclusive jurisdiction over territory that lays outside the United States

through conquest, treaty, purchase, or annexation. *See U.S. v. Corey*, 232 F.3d 1166, 1173 (9th Cir. 2000) (noting that Congress recognized "that territory could change hands, and the United States could gain exclusive jurisdiction over territory that other countries claimed as their own."). Congress's authority over those territories derives not from Article I, § 8, cl.17, but rather from Article IV, § 3, cl. 2 "which grants Congress the power to make all needful rules and regulations regarding territories or other properties belonging to the United States." *People of Puerto Rico v. Koedel*, 927 F.2d 662, 665 (1st Cir. 1991).

Plaintiffs allege that they used the CAEv2 while deployed with the military in Iraq and/or Afghanistan between at different points between 2003 and 2013. During some or all of that period, the United States exercised exclusive control and jurisdiction over bases and other lands upon which the military operated in Iraq and Afghanistan pursuant to treaties and other bilateral agreements. *See, e.g.*, Coalition Provisional Authority Order Number 17 (Revised) (signed on June 27, 2004 by L. Paul Bremer, U.S. Ambassador and CPA Administrator) (agreeing that the Multinational Force in Iraq, of which the United States was part, had "exclusive control and authority" over the "headquarters, camps or other premises [used by the Multinational Force]"); *see also Bakri v. Bush*, 08-cv-01307 (ESH), (D.D.C Sept. 15, 2008) (Dkt. No. 6-1) (Declaration of Col. Charles A. Tennisen, stating that Afghanistan consigned all land and facilities located at Bagram Airfield to the International Security Assistance Force, of which the United States was part).

While Plaintiffs do not specifically identify where they were issued and/or used the CAEv2 and allegedly suffered hearing damage, one or more of these events very likely occurred at a facility or areas that qualifies as a federal enclave. *See Jamil v. Workforce Res., LLC*, Case No. 18-CV-27-JLS (NLS), 2018 WL 2298119, at *2 (S.D. Cal. May 21, 2018) (inferring from Complaint

that some of the alleged events must have occurred at Marine Corps base, a federal enclave, and denying motion to remand).

Because Plaintiffs' claims arose, at least in part, at one or more federal enclaves, this Court has subject matter jurisdiction over the action, and removal is proper under 28 U.S.C. § 1441(a).

## CONCLUSION

For all the foregoing reasons, 3M hereby removes this action from the Fourth Judicial District Court of Minnesota, Hennepin County, to this Court. As noted above, co-defendant Aearo Technologies LLC consents to this removal.

Dated: September 21, 2020                    Respectfully submitted,

*s/ Benjamin W. Hulse*
Jerry W. Blackwell (MN #186867)
Benjamin W. Hulse (MN #0390952)
S. Jamal Faleel (MN #0320626)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3200
Fax: (612) 343-3205
Email: blackwell@blackwellburke.com
       bhulse@blackwellburke.com
       jfaleel@blackwellburke.com

**Counsel for Defendant 3M Company**