| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | Personal Injury |
|---|---|
| DOUGLAS ANDERSON, et al., | |
| Plaintiff, | **SUMMONS** |
| v. | |
| 3M COMPANY and AEARO TECHNOLOGIES LLC, | |
| Defendants. | |

THIS SUMMONS IS DIRECTED TO:        3M Company

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a written response called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

   Schwebel Goetz & Sieben
   5120 IDS Center
   80th S. 8th Street
   Minneapolis, MN 55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond.  A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer.  If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance.  **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice.  You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

## ACKNOWLEDGMENT

The undersigned acknowledge sanctions may be imposed under Minn. Stat. § 549.211.

Dated:  August 25, 2020

**SCHWEBEL GOETZ & SIEBEN, P.A.**
By */s/ Alicia N. Sieben*
William R. Sieben (#100808)
Alicia N. Sieben (#389640)
Matthew J. Barber (#397240)
5120 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2246
Telephone:  612-377-7777
Fax: 612-333-6311
bsieben@schwebel.com
asieben@schwebel.com
mbarber@schwebel.com

Respectfully Submitted,

**PAUL LLP**
Richard M. Paul III (*pro hac forthcoming*)
Ashlea G. Schwarz (*pro hac forthcoming*)
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (#202241)
Amanda M. Williams (#341691)
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 54402
Phone: 612-333-8844
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com

**ATTORNEYS FOR PLAINTIFF**

STATE OF MINNESOTA            DISTRICT COURT
COUNTY OF HENNEPIN        FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| DOUGLAS ANDERSON, KYLE BABB, KEVIN BANKS, JONATHAN BEKEMEYER, MICHAEL BESHIRI, WILLIAM BLAKESLEY, ROBERT CHARLEBOIS, CALVIN COOKSEY, WILLIAM COX, BRAD DAVIS, JASON DILLS, MICHAEL GUY, LEVI HAGEMANN, MICHAEL HALL, JEFF HUEY, ALBERTO KERCADO, TOD LESLIE, JEFFERSON MILLER, JOSE OLIVERAS, SALVADOR PEREZ, RICHARD PRUDEN, ANDREW ROGERS, DANIEL SCOTT, GARY STRICKLAND, JON TAYLOR, JASON TERRILL, WAYNE TURNAGE, TREVOR VASCELLARO, BRIAN WEEDER, AND JOHN WILDS, <br><br> Plaintiffs, <br><br> v. <br><br> 3M COMPANY and AEARO TECHNOLOGIES LLC, <br><br> Defendants. | Personal Injury <br><br><br> **COMPLAINT** |

Plaintiffs bring this action against defendants 3M Company and Aearo Technologies

LLC, and in support thereof alleges:

## NATURE OF THE CASE

1.  This is a failure to warn product liability action related to an earplug manufactured

1

and sold by Defendants. Plaintiffs used Defendants' dual-ended Combat Arms™ Earplugs - Version 2 and, as a result of Defendants' failure to warn, now suffer from hearing loss and tinnitus. Defendants knew the earplugs needed to be inserted in a particular manner in order to have any effectiveness. But the Defendants failed to warn potential purchasers of the danger of failing to do so.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over Plaintiffs' claims under Minn. Stat. § 484.01, subd. 1.

3.  This action is not removable to federal court because Plaintiffs assert no claim arising under the Constitution, law, or treaties of the United States to satisfy 28 U.S.C. § 1331 and because even though the requirements of 28 U.S.C. § 1332(a) may be met, Plaintiffs bring this suit in Defendants' home state and therefore 28 U.S.C. § 1441(b)(2) precludes removal.

4.  Venue is proper in Hennepin County, Minnesota under Minn. Stat. §§ 542.01 and 542.09 because 3M resides in Hennepin County in that it has its resident agent, an office, and a place of business in Hennepin County.

## PARTIES

5.  Plaintiff Douglas Anderson is an individual residing in the state of Virginia.

6.  Plaintiff Kyle Babb is an individual residing in the state of Oregon.

7.  Plaintiff Kevin Banks is an individual residing in the state of Ohio.

8. Plaintiff Jonathan Bekemeyer is an individual residing in the state of South Carolina.

9. Plaintiff Michael Beshiri is an individual residing in the state of Georgia.

10. Plaintiff William Blakesley is an individual residing in the state of Iowa.

11. Plaintiff Robert Charlebois is an individual residing in the state of New Hampshire.

12. Plaintiff Calvin Cooksey is an individual residing in the state of Florida.

13. Plaintiff William Cox is an individual residing in the state of Virginia.

14. Plaintiff Brad Davis is an individual residing in the state of Texas.

15. Plaintiff Jason Dills is an individual residing in the state of Georgia.

16. Plaintiff Michael Guy is an individual residing in the state of Missouri.

17. Plaintiff Levi Hagemann is an individual residing in the state of California.

18. Plaintiff Michael Hall is an individual residing in the state of Texas.

19. Plaintiff Jeff Huey is an individual residing in the state of Virginia.

20. Plaintiff Alberto Kercado is an individual residing in the state of Virginia.

21. Plaintiff Tod Leslie is an individual residing in the state of Michigan.

22. Plaintiff Jefferson Miller is an individual residing in the state of Texas.

23. Plaintiff Jose Oliveras is an individual residing in the state of Arizona.

24. Plaintiff Salvador Perez is an individual residing in the state of Florida.

25. Plaintiff Richard Pruden is an individual residing in the state of Oregon.

26. Plaintiff Andrew Rogers is an individual residing in the state of Colorado.

27. Plaintiff Daniel Scott is an individual residing in the state of Utah.

28. Plaintiff Gary Strickland is an individual residing in the state of Texas.

29. Plaintiff Jon Taylor is an individual residing in the state of Maryland.

30. Plaintiff Jason Terrill is an individual residing in the state of Texas.

31. Plaintiff Wayne Turnage is an individual residing in the state of Mississippi.

32. Plaintiff Trevor Vascellaro is an individual residing in the state of Pennsylvania.

33. Plaintiff Brian Weeder is an individual residing in the state of Nebraska.

34. Plaintiff John Wilds is an individual residing in the state of Mississippi.

35. Defendant 3M is a Delaware corporation with its principal place of business in Minnesota.

36. Defendant Aearo Technologies LLC is a limited liability company formed in Delaware with its principal place of business in Minnesota.

### FACTUAL ALLEGATIONS

### A. Plaintiffs' Use of 3M Combat Arms™ Earplugs Version 2

*Douglas Anderson*

37. Plaintiff Anderson served in the Army National Guard from 1982 to 2012. Plaintiff Anderson was deployed to Afghanistan from 2010 to 2011.

38. Plaintiff Anderson did not wear his 3M dual-ended earplugs while on a military base in the United States.

39. While deployed, Plaintiff Anderson was exposed to damaging, loud impulse, high-pitched sounds.

40. Plaintiff Anderson did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

41. Plaintiff Anderson suffers from hearing loss and Tinnitus.

*Kyle Babb*

42. Plaintiff Babb served in the Army from 2005 to 2008. Plaintiff Babb was deployed to Iraq from 2006 to 2007.

43. Plaintiff Babb did not wear his 3M dual-ended earplugs while on a military base in the United States.

44. While deployed, Plaintiff Babb was exposed to damaging, loud impulse, high-pitched sounds.

45. Plaintiff Babb did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

46. Plaintiff Babb suffers from hearing loss.

*Kevin Banks*

47. Plaintiff Banks served in the Marines from 2000 to 2008. Plaintiff Banks was deployed to Kuwait in 2003 and to Iraq in 2003 and 2004 to 2005.

48. Plaintiff Banks did not wear his 3M dual-ended earplugs while on a military base in the United States.

49. While deployed, Plaintiff Banks was exposed to damaging, loud impulse, high-pitched sounds.

50. Plaintiff Banks did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

51. Plaintiff Banks suffers from tinnitus.

*Jonathan Bekemeyer*

52. Plaintiff Bekemeyer served in the Marines from 1997 to 2006. Plaintiff Bekemeyer was deployed to Iraq in 2004 to 2005.

53. Plaintiff Bekemeyer did not wear his 3M dual-ended earplugs while on a military base in the United States.

54. While deployed, Plaintiff Bekemeyer was exposed to damaging, loud impulse, high-pitched sounds.

55. Plaintiff Bekemeyer did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

56. Plaintiff Bekemeyer suffers from hearing loss and tinnitus.

*Michael Beshiri*

57. Plaintiff Beshiri served in the Army from 2008 to 2010. Plaintiff Beshiri was deployed to Iraq from 2008 to 2010.

58. Plaintiff Beshiri did not wear his 3M dual-ended earplugs while on a military base in the United States.

59. While deployed, Plaintiff Beshiri was exposed to damaging, loud impulse, high-pitched sounds.

60. Plaintiff Beshiri did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

61. Plaintiff Beshiri suffers from hearing loss and tinnitus.

*William Blakesley*

62. Plaintiff Blakesley served in the Air Force from 2001 to 2005. Plaintiff Blakesley was deployed to Iraq in 2004.

63. Plaintiff Blakesley did not wear his 3M dual-ended earplugs while on a military base in the United States.

64. While deployed, Plaintiff Blakesley was exposed to damaging, loud impulse, high-pitched sounds.

65. Plaintiff Blakesley did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug

would not be effective if he did not do so.

66. Plaintiff Blakesley suffers from tinnitus.

*Robert Charlebois Jr.*

67. Plaintiff Charlebois Jr. served in the Army National Guard from 2008 to 2011. Plaintiff Charlebois was deployed to Afghanistan in 2009.

68. Plaintiff Charlebois did not wear his 3M dual-ended earplugs while on a military base in the United States.

69. While deployed, Plaintiff Charlebois was exposed to damaging, loud impulse, high-pitched sounds.

70. Plaintiff Charlebois did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

71. Plaintiff Charlebois suffers from hearing loss and tinnitus.

*Calvin Cooksey*

72. Plaintiff Cooksey served in the Air Force from 2002 to 2006. Plaintiff Cooksey was deployed to Kuwait from 2004 to 2006.

73. Plaintiff Cooksey did not wear his 3M dual-ended earplugs while on a military base in the United States.

74. While deployed, Plaintiff Cooksey was exposed to damaging, loud impulse, high-pitched sounds.

75. Plaintiff Cooksey did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

76. Plaintiff Cooksey suffers from hearing loss and tinnitus.

*William Cox*

77. Plaintiff Cox has served in the Air Force from 2002 to the present. Plaintiff Cox was deployed to Iraq from 2005 to 2006 and again in 2010. Plaintiff Cox was later deployed to Niger from 2015 to 2016.

78. Plaintiff Cox did not wear his 3M dual-ended earplugs while on a military base in the United States.

79. While deployed, Plaintiff Cox was exposed to damaging, loud impulse, high-pitched sounds.

80. Plaintiff Cox did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

81. Plaintiff Cox suffers from hearing loss.

*Brad Davis*

82. Plaintiff Davis served in the Army from 2002 to 2004. Plaintiff Davis was deployed to Iraq in 2003.

83. Plaintiff Davis did not wear his 3M dual-ended earplugs while on a military base

in the United States.

84. While deployed, Plaintiff Davis was exposed to damaging, loud impulse, high-pitched sounds.

85. Plaintiff Davis did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

86. Plaintiff Davis suffers from hearing loss and tinnitus.

### Jason Dills

87. Plaintiff Dills served in the Army National Guard from 2003 to 2007. Plaintiff Dills was deployed to Iraq from 2006 to 2007.

88. Plaintiff Dills did not wear his 3M dual-ended earplugs while on a military base in the United States.

89. While deployed, Plaintiff Dills was exposed to damaging, loud impulse, high-pitched sounds.

90. Plaintiff Dills did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

91. Plaintiff Dills suffers from hearing loss and tinnitus.

### Michael Guy

92. Plaintiff Guy served in the Army from 1991 to 2011. Plaintiff Guy was deployed to

Iraq from 2003 to 2004 and from 2007 to 2008.

93. Plaintiff Guy did not wear his 3M dual-ended earplugs while on a military base in the United States.

94. While deployed, Plaintiff Guy was exposed to damaging, loud impulse, high-pitched sounds.

95. Plaintiff Guy did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

96. Plaintiff Guy suffers from tinnitus.

*Levi Hagemann*

97. Plaintiff Hagemann served in the Marines from 2002 to 2015. Plaintiff Hagemann was deployed to Iraq from 2003 to 2005, in 2006, in 2007, and 2009; deployed with a Marine Expeditionary Unit in 2008; and to Afghanistan in 2010, 2011, and 2012.

98. Plaintiff Hagemann did not wear his 3M dual-ended earplugs while on a military base in the United States.

99. While deployed, Plaintiff Hagemann was exposed to damaging, loud impulse, high-pitched sounds.

100.     Plaintiff Hagemann did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

101.     Plaintiff Hagemann suffers from hearing loss and tinnitus.

*Michael Hall*

102.     Plaintiff Hall served in the Marines from 2005 to 2009. Plaintiff Hall was deployed to Iraq in 2007.

103.     Plaintiff Hall did not wear his 3M dual-ended earplugs while on a military base in the United States.

104.     While deployed, Plaintiff Hall was exposed to damaging, loud impulse, high-pitched sounds.

105.     Plaintiff Hall did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

106.     Plaintiff Hall suffers from tinnitus.

*Jeff Huey*

107.     Plaintiff Huey served in the Navy from 2004 to 2008. Plaintiff Huey was deployed to Afghanistan, Iraq, and the Horn of Africa during 2006 to 2007.

108.     Plaintiff Huey did not wear his 3M dual-ended earplugs while on a military base in the United States.

109.     While deployed, Plaintiff Huey was exposed to damaging, loud impulse, high-pitched sounds.

110.     Plaintiff Huey did not receive instructions to fold back the third flange on

the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

111.     Plaintiff Huey suffers from hearing loss and tinnitus.

*Alberto Kercado*

112.     Plaintiff Kercado served in the Army and Army Reserves from 1983 to 2014. Plaintiff Kercado was deployed to Iraq from 2004 to 2005.

113.     Plaintiff Kercado did not wear his 3M dual-ended earplugs while on a military base in the United States.

114.     While deployed, Plaintiff Kercado was exposed to damaging, loud impulse, high-pitched sounds.

115.     Plaintiff Kercado did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

116.     Plaintiff Kercado suffers from hearing loss and tinnitus.

*Tod Leslie*

117.     Plaintiff Leslie served in the Army National Guard from 1983 to 2012. Plaintiff Leslie was deployed to Iraq from 2005 to 2006.

118.     Plaintiff Turnage did not wear his 3M dual-ended earplugs while on a military base in the United States.

119.     While deployed, Plaintiff Leslie was exposed to damaging, loud impulse,

high-pitched sounds.

120.     Plaintiff Leslie did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

121.     Plaintiff Leslie suffers from tinnitus.

### Jefferson Miller

122.     Plaintiff Miller served in the Army from 2003 to 2013. Plaintiff Miller was deployed to Iraq from 2006 to 2007.

123.     Plaintiff Miller did not wear his 3M dual-ended earplugs while on a military base in the United States.

124.     While deployed, Plaintiff Miller was exposed to damaging, loud impulse, high-pitched sounds.

125.     Plaintiff Miller did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

126.     Plaintiff Miller suffers from tinnitus.

### Jose Oliveras

127.     Plaintiff Oliveras served in the Marine Reserves from 2003 to 2005. Plaintiff Oliveras was deployed to Iraq from 2003 and 2004.

128.     Plaintiff Oliveras did not wear his 3M dual-ended earplugs while on a

military base in the United States.

129.    While deployed, Plaintiff Oliveras was exposed to damaging, loud impulse, high-pitched sounds.

130.    Plaintiff Oliveras did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

131.    Plaintiff Oliveras suffers from hearing loss and tinnitus.

*Salvador Perez*

132.    Plaintiff Perez served in the Navy from 2000 to 2019. Plaintiff Perez was deployed to Africa from 2006 to 2007 and Benghazi in 2012.

133.    Plaintiff Perez did not wear his 3M dual-ended earplugs while on a military base in the United States.

134.    While deployed, Plaintiff Perez was exposed to damaging, loud impulse, high-pitched sounds.

135.    Plaintiff Perez did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

136.    Plaintiff Perez suffers from hearing loss and tinnitus.

*Richard Pruden*

137.    Plaintiff Pruden served in the National Guard from 1996 to 2014. Plaintiff

Pruden was deployed to Iraq from 2009 to 2010.

138.    Plaintiff Pruden did not wear his 3M dual-ended earplugs while on a military base in the United States.

139.    While deployed, Plaintiff Pruden was exposed to damaging, loud impulse, high-pitched sounds.

140.    Plaintiff Pruden did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

141.    Plaintiff Pruden suffers from hearing loss and tinnitus.

*Andrew Rogers*

142.    Plaintiff Rogers served in the Army from 2001 to 2005 and from 2010 to 2015. Plaintiff Rogers also served in the Army Reserves from 2007 to 2009. Plaintiff Rogers was deployed to Kuwait from 2001 to 2002; and to Iraq from 2003 to 2004 and in 2011.

143.    Plaintiff Rogers did not wear his 3M dual-ended earplugs while on a military base in the United States.

144.    While deployed, Plaintiff Rogers was exposed to damaging, loud impulse, high-pitched sounds.

145.    Plaintiff Rogers did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

146.      Plaintiff Rogers suffers from hearing loss and tinnitus.

*Daniel Scott*

147.      Plaintiff Scott served in the Army National Guard from 2004 to 2011. Plaintiff Scott was deployed to Iraq from 2004 to 2005; 2005 to 2006; and 2007 to 2008.

148.      Plaintiff Scott did not wear his 3M dual-ended earplugs while on a military base in the United States.

149.      While deployed, Plaintiff Scott was exposed to damaging, loud impulse, high-pitched sounds.

150.      Plaintiff Scott did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

151.      Plaintiff Scott suffers from hearing loss and tinnitus.

*Gary Strickland*

152.      Plaintiff Strickland served in the Army National Guard from 2004 to 2010. Plaintiff Strickland was deployed to Iraq from 2004 and 2007.

153.      Plaintiff Strickland did not wear his 3M dual-ended earplugs while on a military base in the United States.

154.      While deployed, Plaintiff Strickland was exposed to damaging, loud impulse, high-pitched sounds.

155.      Plaintiff Strickland did not receive instructions to fold back the third flange

on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

156.    Plaintiff Strickland suffers from hearing loss and tinnitus.

### Jon Taylor

157.    Plaintiff Taylor served in the Army from 1985 to 2009. Plaintiff Taylor was deployed to Turkey in 2000; to Iraq from 2005 to 2006; and to Iraq from 2007 to 2008.

158.    Plaintiff Taylor did not wear his 3M dual-ended earplugs while on a military base in the United States.

159.    While deployed, Plaintiff Taylor was exposed to damaging, loud impulse, high-pitched sounds.

160.    Plaintiff Taylor did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

161.    Plaintiff Taylor suffers from hearing loss and tinnitus.

### Jason Terrill

162.    Plaintiff Terrill served in the Air Force from 1992 to 2012. Plaintiff Terrill was deployed to Iraq from 2007 to 2008 and Afghanistan from 2009 to 2010.

163.    Plaintiff Terrill did not wear his 3M dual-ended earplugs while on a military base in the United States.

164.    While deployed, Plaintiff Terrill was exposed to damaging, loud impulse,

high-pitched sounds.

165.     Plaintiff Terrill did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

166.     Plaintiff Terrill suffers from hearing loss and tinnitus.

### Wayne Turnage

167.     Plaintiff Turnage served in the Navy from 2000 to 2005. Plaintiff Turnage was deployed to Iraq from 2003 to 2004.

168.     Plaintiff Turnage did not wear his 3M dual-ended earplugs while on a military base in the United States.

169.     While deployed, Plaintiff Turnage was exposed to damaging, loud impulse, high-pitched sounds.

170.     Plaintiff Turnage did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

171.     Plaintiff Turnage suffers from hearing loss and tinnitus.

### Trevor Vascellaro

172.     Plaintiff Vascellaro served in the Air Force from 2010 to 2014. Plaintiff Vascellaro was deployed to Afghanistan from 2012 to 2013.

173.     Plaintiff Vascellaro did not wear his 3M dual-ended earplugs while on a

military base in the United States.

174.     While deployed, Plaintiff Vascellaro was exposed to damaging, loud impulse, high-pitched sounds.

175.     Plaintiff Vascellaro did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

176.     Plaintiff Vascellaro suffers from hearing loss and tinnitus.

**Brian Weeder**

177.     Plaintiff Weeder served in the Army Reserves from 2003 to 2013. Plaintiff Weeder was deployed to Iraq from 2004 to 2005.

178.     Plaintiff Weeder did not wear his 3M dual-ended earplugs while on a military base in the United States.

179.     While deployed, Plaintiff Weeder was exposed to damaging, loud impulse, high-pitched sounds.

180.     Plaintiff Weeder did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

181.     Plaintiff Weeder suffers from hearing loss and tinnitus.

**John Wilds**

182.     Plaintiff Wilds served in the Army National Guard from 2002 to 2010.

Plaintiff Wilds was deployed to Afghanistan from 2004 to 2005.

183.    Plaintiff Wilds did not wear his 3M dual-ended earplugs while on a military base in the United States.

184.    While deployed, Plaintiff Wilds was exposed to damaging, loud impulse, high-pitched sounds.

185.    Plaintiff Wilds did not receive instructions to fold back the third flange on the opposite side of the use end of the 3M dual-ended earplug or a warning that the earplug would not be effective if he did not do so.

186.    Plaintiff Wilds suffers from tinnitus.

**Defendants' Manufacture and Testing of the Combat Arms™ Earplugs**

187.    Aearo Technologies was the global market leader in hearing and eye protection and was based in Indianapolis, Indiana. Aearo Technologies developed, marketed, and sold the Combat Arms™ earplug until being acquired by 3M in 2008 for $1.2 billion. Afterwards, 3M hired Aearo's employees and maintains it as a separate operating unit. Post-acquisition, the Combat Arms™ earplugs have been marketed and sold under the 3M brand. Because 3M acquired both the assets and liabilities of Aearo, Aearo and 3M are used interchangeably and all allegations against Aearo are directed as a matter of law against 3M.

188.    Aearo developed dual-ended, non-linear (selective attenuation) Combat Arms™ earplugs for the specific purpose of providing a single set of earplugs that

provide two options for hearing attenuation depending on how they are worn:



189.    The earplugs can be worn in an open or "unblocked" position (yellow end in) to block, or at least significantly reduce, loud impulse sounds, while still allowing the user to hear quieter noises. Alternatively, the earplugs can be worn in a closed or "blocked" position (green end in) to block, or at least significantly reduce, all sounds, i.e., operate as ordinary earplugs.

190.    Defendants knew these earplugs, at a minimum, required special instructions for use as early as 2000.

191.    At all relevant times, the Combat Arms™ earplugs had a tendency to imperceptibly loosen in the wearer's ear, thus allowing damaging sounds to enter the ear canal around the outside of the earplug. Specifically, the basal edge of the third flange of

the non-inserted end of the earplug is prone to press against some wearers' ear canals and fold back to its original shape, thereby loosening the seal in their ear canals. Because the earplug is symmetrical, this occurs regardless of which end is inserted into the ear.

192.    Aearo learned of this problem when it completed testing of the Combat Arms™ earplugs. In fact, in February 2000, after the Combat Arms™ earplugs failed specification testing, Aearo employees rolled back the non-inserted yellow flanges to mitigate the loosening effect.

193.    The value and effectiveness of earplugs has been standardized under federal law through a Noise Reduction Rating ("NRR"). The testing and labeling of earplugs such as the Combat Arms™ earplugs to achieve an NRR is governed by federal regulations promulgated by the Environmental Protection Agency ("EPA") pursuant to the Noise Control Act, 42 U.S.C. § 4901 *et seq.* Specifically, 40 C.F.R. § 211.206-1 provides:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19-1974.

194.    Further, 40 C.F.R. §211.204-4(e) requires that specific supporting information accompany hearing protection devices sold in the United States:

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. In the case of bulk packaging and dispensing, such supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location.... **Instructions as to the proper insertion or placement of the device.**

(Emphasis added).

**Aearo's Test Results for the Combat Arms™ Earplugs Demonstrated the Need for a Warning and Special Fitting Instructions**

195.    The NRR is supposed to represent the amount of sound attenuation experienced by a test group under conditions specified by the federal Noise Control Act's testing methodology.

196.    In or around January 2000, Aearo began NRR testing on each end of the Combat Arms™ earplug. Rather than use an independent test lab, Aearo performed its testing in-house at its E-A-RCAL laboratory (also now owned by 3M). Aearo selected 10 test subjects, including some of its own employees. Aearo's test protocol involved testing: (1) the subject's hearing without an earplug; (2) the subject's hearing with the open/ unblocked (yellow) end of the Combat Arms™ earplug inserted; and (3) the subject's hearing with the closed/blocked (green) end of the Combat Arms™ earplug inserted.

197.    Aearo's own employees monitored the test results as the tests were performed, which allowed them to stop the testing at any point if they were not achieving the desired NRR. This violated the ANSI S3.19-1974 testing protocol. In fact, Aearo stopped the test of the green end of the Combat Arms™ earplug inserted after only 8 of the 10 subjects had been tested. At that point, the Combat Arms™ earplugs were failing expectations miserably. Aearo was expecting to achieve an NRR of 22 with the green end inserted, but in fact was on target to receive a 10.9 rating based on the experiences of the

first eight subjects.

198.    Despite stopping the test on the green end of the Combat Arms™ earplugs, Aearo had the remaining two test subjects complete the test with respect to the yellow end of the Combat Arms™ earplugs only because Aearo liked the low NRR rating the test was indicating to that point. After completion, however, testing of the yellow end resulted in an NRR of -2, which falsely suggested that the earplugs actually amplified sound. Aearo thus knew that the test was inaccurate and needed to be repeated. Instead, Aearo changed the -2 NRR to a 0 NRR, and used that rating on its labels.

199.    After prematurely stopping the NRR test of the green end of the Combat Arms™ earplug, Aearo investigated the disappointing test results and discovered that because the stem of the earplug was so short, it was difficult to insert the earplug deep enough into the wearer's ear canal to obtain a proper fit as required by ANSI S3.19-1974, Section 3.2.3. See, Acoustical Society of America Standard Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs (ASA STD 1-1975).

200.    Aearo also discovered that when the green end of the Combat Arms™ earplug was inserted into the ear using the standard fitting instructions, the basal edge of the third flange of the yellow end pressed against the wearer's ear and folded backward. When the inward pressure of the earplug was released, the yellow flanges tended to return to their original shape, thereby loosening the earplug, often

imperceptibly to the wearer. And, because the Combat Arms™ earplug was symmetrical, this same problem occurred when the earplug was reversed.

201.    Aearo later instructed test subjects to fold the flanges on the non-inserted end of the earplug back before inserting it into the ear.

202.    Using these manipulated fitting instructions, Aearo re-tested the green end of the Combat Arms™ earplugs starting in February 2000. During this re-test of the green end, test subjects folded back the yellow flanges of the earplug (essentially elongating the too-short stem) to allow them to insert the earplugs deeper into their ears to obtain a proper fit. Because the yellow flanges were folded back, the basal edge of the third flange no longer pressed against the subject's ear canal, and thus did not cause the earplug to loosen during the testing. Using this manipulated test protocol, Aearo achieved a 22 NRR on the green end of the Combat Arms™ earplug.

203.    Due to the symmetrical nature of the Combat Arms™ earplugs, the problem that affected the fit of the green end similarly affected the fit of the yellow end. The fact that Aearo's testing of the yellow end resulted in a -2 NRR meant that the earplugs (when used without the special instructions described above) did not provide a proper fit (as required by ANSI S3.19-1974, Section 3.2.3) between the ear canal of at least some of the subjects and the earplugs. As a result, some subjects had large standard deviations across trials on the yellow end test, which suppressed the NRR rating.

204.    Nevertheless, Aearo did not re-test the yellow end using the manipulated

fitting instructions like it did on the green end, i.e., folding back the flanges on the green end of the earplug before inserting the yellow end into the ear.

205.    Aearo did not re-test the yellow end because it knew that it would not be able to obtain a 0 NRR (much less the facially invalid -2 NRR).

206.    Moreover, the need for the special fitting instructions for the Combat Arms™ earplugs is more important during real-life use than in a lab where the NRR tests are performed over the span of just a few minutes and the head of the test subject remains virtually motionless during the test. Wearers, such as Plaintiffs on the other hand, may wear the earplug for an extended period of time and are more active than test subjects in a lab.

207.    Because the issue was imperceptible to the wearer, an improper fit would go undetected by those who wore them.

208.    Defendants continued to sell the Combat Arms™ earplugs until 2016, at which time Defendants discontinued the earplug. See Discontinuation: 3M Combat Arms Earplugs Version 2 (Nov. 17, 2015)).

209.    Defendants' failure to warn about the need for special fitting instructions for the Combat Arms™ earplugs caused Plaintiffs to suffer hearing loss and tinnitus.

210.    At all times after 3M's acquisition of Aearo, 3M knew of, conspired with, and was complicit in Aearo's wrongful acts in marketing and selling the Combat Arms™ earplugs without warning of the need for modified fitting instructions.

## TOLLING OF STATUTES OF LIMITATIONS

211.     Plaintiffs could not, by the exercise of reasonable diligence, have discovered Defendants' wrongful acts as the cause of his injuries at an earlier time, because, at the time of these injuries, the cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did Plaintiffs have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

212.     Further, the running of the statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiffs the risks associated with use of the Combat ArmsTM earplugs without adhering to the specific fitting instructions discussed above.

213.     Because of Defendants' failure to warn, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that they had been exposed to the risks alleged herein, and that those risks were the direct and proximate result of Defendants' acts and omissions.

214.     Through Defendants' affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Combat ArmsTM earplugs, Plaintiffs were prevented from discovering this information sooner because Defendants misrepresented and continued to misrepresent the risks associated with using the Combat ArmsTM

earplugs without adhering to the specific fitting instructions discussed above.

COUNT I: PRODUCT LIABILITY – FAILURE TO WARN

215.    Plaintiffs incorporate by reference the paragraphs above as if fully set forth herein.

216.    Defendants are the manufacturers and sellers of the Combat Arms™ earplugs.

217.    The Combat Arms™ earplugs that Defendants manufactured, distributed, and sold lacked adequate warnings, instructions, or labels at the time they left Defendants' control.

218.    Defendants failed to warn, failed to provide instructions, and failed to provide an adequate label that included the modified fitting instructions necessary for the Combat Arms™ earplug to fit correctly in the wearer's ear and create the seal necessary to block out damaging sounds.

219.    Defendants had a duty to sell the Combat Arms™ earplugs with reasonable and due care for the safety and well-being of wearers, including Plaintiffs. Defendants breached that duty.

220.    Defendants had a duty to provide adequate warnings and/or instructions to prevent the risks associated with the Combat Arms™ earplugs when worn in the ordinary course. Defendants breached that duty.

221.    It was foreseeable to Defendants that the Combat Arms™ earplugs would

be unreasonably dangerous if distributed without a warning regarding the risks of damage to the ear with an improper fit and/or modified fitting instructions.

222.    Not only was it foreseeable, it was foreseen by Defendants. During testing, Defendants discovered that because the stem of the earplug was so short, it was difficult to insert the earplug deep enough into the wearer's ear canal to obtain a proper fit.

223.    Defendants also discovered that when the green end of the Combat Arms™ earplug was inserted into the ear using the standard fitting instructions, the basal edge of the third flange of the yellow end pressed against the wearer's ear and folded backward. When the inward pressure of the earplug was released, the yellow flanges tended to return to their original shape, thereby loosening the earplug, often imperceptibly to the wearer. And, because the Combat Arms™ earplug was symmetrical, this same problem occurred when the earplug was reversed.

224.    Defendants had a post-sale duty to warn of the above alleged product-related risks because Defendants knew or reasonably should have known that the Combat Arms™ earplug posed a substantial risk of harm to wearers, including Plaintiffs, if used without adhering to specific fitting instructions; the wearer who used the Combat Arms™ earplug can reasonably be assumed to be unaware of the risk of harm of using the Combat Arms™ earplugs without specific fitting instructions because the above alleged loosening effect was imperceptible; a warning or instruction showing how to correctly and safely use the Combat Arms™ earplug could have been effectively

communicated to and acted upon by the wearer to whom a warning or instruction might be provided; and the risk of harm, including but not limited to hearing loss in wearers, is sufficiently great to justify the slight burden of providing a warning or instruction. Defendants breached this duty by failing to provide a post-sale warning or instruction.

225.     The Combat Arms™ earplugs contained no warnings, or in the alternative, inadequate warnings and/or instructions, as to the risk that the Combat Arms™ earplugs would allow damaging sounds to bypass the earplug thereby posing a serious risk to Plaintiffs' hearing unbeknownst to Plaintiffs.

226.     The warnings and instructions that accompanied the Combat Arms™ earplugs failed to provide the level of information that an ordinary wearer would expect when using the Combat Arms™ earplugs in a manner reasonably foreseeable to Defendants.

227.     Had Plaintiffs received a proper or adequate warning as to the risks associated with the use of the Combat Arms™ earplugs in the manner contemplated by Defendants, they would not have used them.

228.     Additionally, and/or alternatively, had Plaintiffs received the modified fitting instructions that were used by Defendants during the testing, which were not disclosed to Plaintiffs, Plaintiffs would have followed the modified fitting instructions to ensure a proper seal to prevent damaging sounds from entering the ear canal.

229.     Plaintiffs suffered injury and damage as a direct and proximate result of

Defendants' failures to warn and/or provide adequate instructions regarding the dangerous condition of the Combat Arms™ earplugs that the Defendants manufactured, distributed, and sold.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request from Defendants, jointly and severally, compensatory damages, together with appropriate equitable relief, costs and attorneys' fees as follows:

A.  Award of monetary damages, including compensatory relief, to which Plaintiffs are entitled at the time of trial in an amount exceeding $50,000;

B.  Award of pre- and post-judgment interest;

C.  Award of costs; and

D.  Award of all such other and further relief as may be available at law or equity and may be proper under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

### ACKNOWLEDGMENT

The undersigned acknowledge sanctions may be imposed under Minn. Stat. § 549.211.

Dated:  August 25, 2020

By /s/ Alicia N. Sieben
William R. Sieben (#100808)
Alicia N. Sieben (#389640)
Matthew J. Barber (#397240)
**SCHWEBEL GOETZ & SIEBEN, P.A.**
5120 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2246
Telephone:  612-377-7777
bsieben@schwebel.com
asieben@schwebel.com
mbarber@schwebel.com

Richard M. Paul III *(pro hac forthcoming)*
Ashlea G. Schwarz *(pro hac forthcoming)*
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com

**ATTORNEYS FOR PLAINTIFF**

Respectfully submitted,


Daniel Gustafson (# 202241
Amanda M. Williams (# 341691)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844

DGustafson@gustafsongluek.com
awilliams@gustafsongluek.com